UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

_____X

| | |
|---|---|
| THOMAS M. MORAN, | CIVIL ACTION |
| Plaintiff | NO. 1:19-CV-03079-AT |
| VS. | |

MTA METRO-NORTH RAILROAD COMPANY,
PO NICHOLAS STRYPE (individual capacity),
PO DOUGLAS COHEN (individual capacity),
PO LUIGI SEIDITA (individual capacity),
PO JASON NANDOO (individual capacity),
PO JOSEPH TERACCIANO (individual capacity),
and PO RICHARD DOE (Full names and number
of whom are unknown at present, and other
unidentified members of the MTA Police
Department in their individual capacities),

Defendants                                    JUNE 19, 2019

_____X


## FIRST AMENDED COMPLAINT

### JURISDICTION

1. The jurisdiction of this Court is predicated upon the Federal Employers' Liability Act (45 U.S.C. § 51, et seq.)(hereinafter the "FELA").

2. The jurisdiction of this Court is also predicated upon the Constitution of the United States and the Civil Rights Act, Title 42, of the United States Code, § 1983.

3.  The Court has federal question jurisdiction per 28 U.S.C. §§ 1331, 1343 (3) & (4) and supplemental jurisdiction under provisions of 28 U.S.C. § 1367.  Venue properly lies in this Court pursuant to 45 U.S.C. § 56, and 28 U.S.C. § 1391 (b)(1) and (d).

## THE PARTIES

4.  The plaintiff, Thomas Moran, is domiciled in Cheshire, Connecticut.

5.  At all relevant times hereto,  Defendant MTA Metro-North Railroad Company (hereinafter "MTA-MNR" or "defendant MTA-MNR") was a corporation, a wholly owned subsidiary of the Metropolitan Transportation Authority (hereinafter the "MTA"), duly organized and existing under and by virtue of the laws of the State of New York.

6.  At all times relevant hereto, Metropolitan Transportation Authority ("MTA") was a New York State agency having a usual place of business in New York, New York.   MTA was authorized under the laws of the State of New York to operate and maintain the MTA Police Department (MTAPD).

7.  Defendant Nicholas Strype at all times set forth herein was employed by the MTA as a police officer pursuant to NY Pub. Auth. L. § 1266-h and acting in the course and scope of his employment as an MTA police officer, and had responsibility for taking appropriate measures to ensure that proper procedure was followed on all arrests and to preserve the constitutional rights of arrestees.  Defendant Strype is sued in his individual capacity.

8.  Defendant Douglas Cohen at all times set forth herein was employed by the MTA as a police officer pursuant to NY Pub. Auth. L. § 1266-h and acting in the course and scope of his employment as an MTA police officer, and had responsibility for taking appropriate measures to ensure that proper procedure was followed on all arrests and to

preserve the constitutional rights of arrestees.  Defendant Cohen is sued in his individual capacity.

9.   Defendants Luigi Seidita, Jason Nandoo, Joseph Teracciano, and RICHARD DOE all times set forth herein were employed by the MTA as police officers pursuant to NY Pub. Auth. L. § 1266-h and acting in the course and scope of their employment as MTA police officers, and had responsibility to take appropriate measures to ensure that proper procedures were followed on all arrests and to preserve the constitutional rights of arrestees. Defendants Luigi Seidita, Jason Nandoo, Joseph Teracciano, and RICHARD DOE are sued in their individual capacities.

## FACTS

10. During all times herein mentioned, defendant MTA-MNR was a common carrier engaged in the business of interstate commerce, and as such, operated a railroad in such business between New York, New York, and New Haven, Connecticut.

11.  At the time the plaintiff received the injuries complained of, he was employed by defendant MTA-MNR as a Conductor at or about Grand Central Terminal ("GCT") in Manhattan, New York.

12. At the time the plaintiff received the injuries complained of, defendant MTA-MNR was engaged in interstate commerce and the plaintiff was employed in furtherance of said commerce.

13.   The MTA was created for the continuance, further development and improvement of commuter transportation and other services related thereto within the metropolitan commuter transportation district, including but not limited to such transportation by railroad in accordance with New York Law.

14.  The MTA was given the power to acquire any transportation facility and to operate, maintain, renovate, improve or repair such facility and lease railroad cars for use in its passenger service.  The MTA may levy and collect fares, and it may establish schedules, standards of operation, and public safety rules and regulations as necessary for the use and operation of any transportation facility.  The MTA may exercise these powers itself or it may cause one or more of its powers to be exercised or performed by one or more wholly owned subsidiary corporations.

15.  Before approximately 1998 defendant MTA-MNR maintained its own police force.

16.  In 1997, New York Law authorized the MTA to provide and maintain a police department for all MTA affiliates including defendant MTA-MNR and the Long Island Railroad (the "LIRR").

17.  On January 1, 1998, the MTA consolidated police services and formed the "MTAPD" and all defendant MTA-MNR and LIRR police officers became employees of the MTA.

18. Because of the MTA's ownership, involvement and financial intermingling with defendant MTA-MNR and the LIRR, the MTA at all relevant times hereto was a railroad engaged in interstate commerce for purposes of lawsuits brought under the FELA against the MTA by MTA police officers whose job duties specifically related to the MTA's wholly owned subsidiary railroads, defendant MTA-MNR and the LIRR.

19.  At all times relevant hereto, the MTA's Police Department provided police services for the MTA, defendant MTA-MNR, and the LIRR as it is authorized and obligated to do so under New York Law and defendant MTA Police Officers were acting as

defendant MTA-MNR's agents for purposes of the FELA, and/or defendant MTA Police Officers were co-employees, borrowed servants and/or fellow servants of defendant MTA-MNR's employees, inasmuch as and/or to the extent that they are all employed in the service of the similarly situated railroads, defendant MTA-MNR and the LIRR.

20.  On or about Friday, August 4, 2017 at approximately 12:45 a.m., the plaintiff was engaged in his duties as a Conductor at or about Grand Central Terminal in New York, which yards, platforms, pathways, walking areas, lines, tracks, rails, and all other equipment and appliances appurtenant thereto were owned and/or operated and/or controlled and/or maintained by defendant MTA-MNR and/or the MTA.

21.  At the time the plaintiff received the injuries complained of he was following defendant MTA-MNR's Operating Schedule that required him to not permit customers to travel from GCT to 125th Street on the 1:07 a.m. express train.

22.  At the time the plaintiff received the injuries complained of defendant MTA-MNR, its agents, servants, employees, co-employees, borrowed servants and/or fellow servants of defendant MTA-MNR were responsible for providing the plaintiff with a reasonably safe place to work, only arresting employees with probable cause, only using reasonable force when arresting employees, and not prosecuting or detaining employees without probable cause.

23.  The plaintiff was a Conductor for a 1:07 a.m. train to New Haven that was boarding passengers on Track #27.

24.  The plaintiff observed a passenger in a wheelchair and inquired on his destination because only certain cars would platform at different stations.  The passenger informed the plaintiff that he was travelling to 125th Street.  When the plaintiff informed

the passenger that he was on the wrong train because this particular train only receives passengers at 125th Street, the passenger became abusive and threatening and appeared to be intoxicated.

25.  At approximately 12:50 a.m., the plaintiff walked back into GCT to request assistance from a group of police officers including defendants Strype and/or Cohen and/or Nandoo and/or Seidita and/or Teracciano.  These defendants did not advise the plaintiff that they had escorted the same passenger earlier at approximately 12:30 a.m. down the ramp to Track 27 platform because he wanted to go to 125th Street in Harlem.

26.  The plaintiff's Locomotive Engineer, Richard Marcri, was standing near defendants Strype and/or Cohen and/or Nandoo and/or Seidita and/or Teracciano and he heard the plaintiff asking the defendant Police Officers for help with a misguided, drunk, verbally abusive, and unruly handicapped passenger.  He further heard the defendant police officers instruct the plaintiff to ride the passenger if he had a ticket.

27.  After the plaintiff was walking back to his train, Engineer Marcri heard one of the shorter defendant Police Officers complain that he has seen the plaintiff before and he always has problems and Engineer Marcri then heard the taller police officer with a dog say that the plaintiff is on his own and we won't help him.

28.  Defendant Seidita questioned MTA Metro North's Deputy General Station Master Brian Hicks about whether a conductor can refuse a passenger to travel 125th Street from GCT and Defendant Seidita was brought into the trainmaster's office to get an explanation of the Metro North rules.

29.  The plaintiff approached the passenger who then started screaming and threatening the plaintiff.  The plaintiff told Engineer Marcri that he was not dealing with

this and the Engineer warned the plaintiff not to go back to the police because he heard them say that they were not going to help him.

30. There has been a history of bad relations between MTA Police Officers and MTA-Metro North Conductors and between one of the defendant police officers and the plaintiff.

31. The plaintiff went to the Trainmaster's office and when he opened the door, he observed defendant Seidita speaking with MTA-MNR's Trainmaster Douglas Martin in the presence of MTA-MNR's Deputy General Station Master Brian Hicks. The plaintiff stayed in the doorway and informed the Trainmaster that he wanted the passenger removed. Defendant Seidita asked for the plaintiff's name. Defendant Seidita then asked Trainmaster Martin for the plaintiff's name and employee number. The plaintiff said that he did not have to give him his name and told him, "You guys are useless." Defendant Seidita then stated to the plaintiff, "Have a nice day."

32. As the plaintiff was walking back to his train, defendant police officers including defendants Strype and Cohen were waiting for him at the top of the ramp to the platform. One of the defendant police officers yelled, "Why don't you just do your job?" The plaintiff responded, "I am doing my job. Why don't you do your job?" As the plaintiff continued walking to his train, the defendant police officers yelled to him. The plaintiff turned and said, "I was asking for your help. Aren't you guys supposed to help?" The Engineer was standing next to the second rear car and was able to hear the plaintiff's last statement before he observed the defendant police officers approach with a German Shepard and then tackle the plaintiff.

33.  Without any probable cause or explanation, defendants Strype and/or Cohen and/or Seidita and/or Nandoo and/or Teracciano, and/or Richard Doe, along with a German Shepard, surrounded the plaintiff, slammed and/or dragged him on the ground, handcuffed him with excessive tightness, placed him under arrest, twisted his wrist excessively after he was handcuffed, imprisoned the plaintiff in three different cells, completed an MTA Police Incident Report listing criminal charges as Assault in the Second Degree, Resisting Arrest, and Disorderly Conduct: Fighting/Violent Behavior, and later charged and/or caused him to be charged with Assault in the Second Degree in violation of PL 120.05(3), a felony, and Resisting Arrest in violation of PL 205.30, a misdemeanor.

34.  This vicious and brutal assault by the defendant police officers was recorded on MTA's Police surveillance video.  The video does not show the plaintiff screaming, cursing, or causing a public alarm to other commuters trying to board the train and does not show any crowd gathering on the platform as indicated in the MTA Police Incident Report.  The video does not show the plaintiff resisting arrest.

35.  Witnesses identified in The MTA Police Incident Report including the Trainmaster, the Deputy General Station Master, and the Engineer, can verify that the plaintiff did not curse as the defendant police officers falsely claim in their Incident Report. The defendant police officers prepared a false Incident Report to justify their vicious and brutal assault of the plaintiff who was simply following MTA-MNR rules, practices and/or procedures including, but not limited to, Metro North Operating Rules Section III B, Operating Schedule/Timetable No. 3 Effective April 2, 2017 and Metro North On-Board Service Manual Revised February 2017 Rule 2015 requiring him to refuse to carry a

passenger from GCT to 125th Street on the 1:07 a.m. express Train to New Haven, and giving him the discretion to obtain police assistance to remove a verbally abusive and threatening passenger from the train.

## FIRST COUNT: FELA CLAIM AGAINST DEFENDANT MTA METRO-NORTH RAILOAD

36.   The plaintiff realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 35 above as if fully set forth herein.

37.   Defendant MTA-MNR, its agents, servants, employees, co-employees, borrowed servants and/or fellow servants were negligent and/or acted intentionally in one or more of the following ways:

(a)  The Trainmaster failed to request and/or instruct the MTA police officers to remove the passenger as the plaintiff had requested; and/or

(b)  The Trainmaster failed to properly or adequately communicate defendant MTA-MNR's rules and/or practices and/or procedures applicable to the situation to the MTA police officers; and/or

(c)  The Trainmaster failed to resolve the disagreement between the plaintiff and MTA police officers; and/or

(d)  The Trainmaster failed to inform the MTA police officers that the decision to remove a customer from a train will be made by the Conductor unless he is instructed otherwise by a Trainmaster; and/or

(e)  The Trainmaster did not go on the train to observe the problem passenger to determine whether the problem passenger should be removed from the train; and/or

(f)  The Trainmaster failed to inform the MTA police officers that he would go onto the train to determine whether the problem passenger should be removed; and/or

(g)  it failed to promulgate and enforce proper and safe rules and/or practices and/or procedures for the safe conduct of the work operations of the railroad; and/or

(h)  it failed to properly supervise its employees and/or co-employees and/or agents and/or borrowed servants and/or fellow servants; and/or

(i)  it failed to provide plaintiff with safe and/or properly trained employees and/or co-employees and/or agents and/or borrowed servants and/or fellow servants; and/or

(j)  it negligently hired or retained its employees and/or co-employees and/or agents and/or borrowed servants and/or fellow servants; and/or

(k)  they instructed him to do his job and then intentionally slammed and/or dragged the plaintiff to the ground; and/or

(l)  they instructed him to do his job and then intentionally overtightened the handcuffs; and/or

(m)  they instructed him to do his job and then intentionally twisted his wrist excessively after he was handcuffed; and/or

(n)  they instructed him to do his job and then intentionally applied too much force and weight on the plaintiff; and/or

(o)  they instructed him to do his job and then intentionally used excessive force when they arrested the plaintiff; and/or

(p)  they instructed him to do his job and then intentionally arrested the plaintiff and/or

(q)  they instructed him to do his job and then intentionally imprisoned the plaintiff and/or

(r)  they failed to provide the plaintiff with a reasonably safe place to work.

38.  As a result of the negligence of defendant MTA-MNR, its agents, servants, employees, co-employees, borrowed servants and/or fellow servants, the plaintiff suffered multiple contusions and injuries to his low back, pelvis, neck, head, shoulder, wrist, and psychiatric and psychological injuries including severe Post Traumatic Stress Disorder ("PTSD").

39.  As a result of the negligence of defendant MTA-MNR, its agents, servants, employees, co-employees, borrowed servants and/or fellow servants the plaintiff suffered pain, humiliation, lasting embarrassment, anxiety, sleep deprivation, emotional and mental anguish resulting in severe psychological injuries and other economic losses inclusive of loss of earnings and attorneys' fees defending criminal charges.

40.  The injuries and damages to the plaintiff were caused in whole or in part by the negligence of defendant MTA-MNR, its agents, servants, employees, co-employees, borrowed servants and/or fellow servants in the performance of their duties.

41.  As a result of the said injuries, the plaintiff has suffered and will suffer lost wages and benefits, incurred medical expenses, suffered physical pain and mental anguish and will continue to do so in the future, and has an impairment to his future earning capacity and impaired economic horizons.

**WHEREFORE**, in order to fairly and justly compensate the negligently injured plaintiff and thereby promote safe operating conditions on the defendant MTA-MNR, the plaintiff demands a judgment for monetary damages against defendant MTA-MNR in addition to any further relief the Court deems just and equitable.

## SECOND COUNT: BY WAY OF 42 USC § 1983 FOR FALSE ARREST AND WRONGFUL IMPRISONMENT IN VIOLATION OF THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS OF THE CONSTITUTION AGAINST ALL DEFENDANT MTA POLICE OFFICERS

42.  The plaintiff realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 35 above as if fully set forth herein.

43.  This action herein arises under the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States of America as well as the due process and equal protection clauses to the Constitution of the United States, under federal law, particularly the Civil Rights Act, Title 42, the United States Code, § 1983.

44.  On or about Friday, August 4, 2017 at or about 12:45 a.m. while the plaintiff was in the performance of his duties as a Conductor employed by defendant MTA-MNR in GCT, defendants Strype and/or Cohen and/or Seidita and/or Nandoo and/or Teracciano, and/or Richard Doe did cause and/or take part in the wrongful arrest, handcuffing, false imprisonment of the plaintiff.

45.  Defendants Strype and/or Cohen and/or Seidita and/or Nandoo and/or Teracciano and/or Richard Doe did not have any probable cause to arrest the plaintiff.

46.  Defendants Strype and/or Cohen and/or Seidita and/or Nandoo and/or Teracciano, and/or Richard Doe grabbed the plaintiff, slammed and/or dragged him to the

ground, put excessive body weight on him, handcuffed him and imprisoned him for over ten hours.

47.  The plaintiff was conscious of his arrest and confinement.

48.  The plaintiff did not consent to his arrest and confinement.

49.  Defendants Strype and/or Cohen and/or Seidita and/or Nandoo and/or Teracciano, and/or Richard Doe were acting under color of law.

50.  On August 4, 2017 while the plaintiff was lawfully and peacefully at his place of employment, he was falsely placed under arrest, brought forcibly to the ground, handcuffed, removed from the scene and taken into custody by the police, and wrongfully detained against his will and/or without any explanation being provided for said arrest or the nature of any charges being brought against him.

51.  The plaintiff was brought to the MTA police department's GCT headquarters, where he was placed into a jail cell and held against his will for hours.  Despite the pleas of the plaintiff that he was innocent, the plaintiff was arrested, handcuffed, processed, and held against his will over the course of the day for over ten hours, all to his embarrassment, shame and humiliation.

52.  Without any warrant or probable cause therefor defendants Strype and/or Cohen and/or Seidita and/or Nandoo and/or Teracciano and/or Richard Doe individually and/or in concert with each other caused the plaintiff to be falsely arrested and wrongfully detained or imprisoned, being taken into custody at his place of employment and imprisoned at  the MTA Police Headquarters in GCT and then again in two other cells that day.

53. On or about February 5, 2018 the charges against the plaintiff were dismissed in his favor.

54. The conduct of defendants Strype and/or Cohen and/or Seidita and/or Nandoo and/or Teracciano and/or Richard Doe deprived the plaintiff of the following rights, privileges and immunities secured to him by the Constitution of the United States:

a. The right of plaintiff to be secure in his place of employment, person and effects against unreasonable search, seizure and arrest under the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States;

b. The right of plaintiff not to be deprived of life, liberty or property without due process of law, and the right to the equal protection of the laws, secured by the Fourth, Fifth and Fourteenth Amendment to the Constitution of the United States;

c. The right to be and remain free from the deliberate public and private humiliation inflicted upon him by the defendants and free from their verbal and emotionally abusive, cruel, inhuman and unusual punishment, secured by the due process clause of the Fourteenth Amendments to the Constitution of the United States.

d. The right to be kept free from the unwarranted verbal and emotional abuse and the physically and verbally assaultive misconduct of the defendants.

e. The right of every individual to the possession and control of his own person.

f. The right to be kept free from false arrest and wrongful imprisonment.

55. The acts, conduct and behavior of defendants Strype and/or Cohen and/or Seidita and/or Nandoo and/or Teracciano and/or Richard Doe individually and/or in concert with each other, were performed knowingly and/or intentionally and/or maliciously

and/or recklessly, by reason of which the plaintiff, is entitled to an award of punitive damages.

56.    Defendants Strype and/or Cohen and/or Seidita and/or Nandoo and/or Teracciano and/or Richard Doe subjected the plaintiff to these deprivations of his rights in such a manner as to render them liable to the plaintiff for punitive damages.

57.    Punitive damages are available against one or more of these defendants and are hereby claimed as a matter of federal common law.

58.    Plaintiff seeks recovery of costs, including reasonable attorneys' fees under 42 U.S.C. § 1988.

59.    That as a result of the conduct of the defendants Strype and/or Cohen and/or Seidita and/or Nandoo and/or Teracciano and/or Richard Doe, the plaintiff was caused to sustain severe injuries, pain and suffering, fear of imminent bodily harm, emotional distress, severe PTSD, loss of reputation, loss of employment, loss of earnings, defamation of character, humiliation and mental anguish in his public and private life, loss of liberty, deprivation of freedom, denial of due process of law, and deprivation of his civil rights as secured by the Constitution of the United States, and seek mental health counseling, lose wages, incur medical bills, and have to retain an attorney.

**THIRD COUNT: BY WAY OF 42 USC § 1983 FOR MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS OF THE CONSTITUTION AGAINST ALL DEFENDANT MTA POLICE OFFICERS**

60.    The plaintiff realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 35 above as if fully set forth herein.

61.    On or about August 4, 2017 there was no probable cause to arrest the plaintiff.

62.   After arresting the plaintiff, defendants Strype and/or Cohen and/or Seidita and/or Nandoo and/or Teracciano and/or Richard Doe did maliciously cause plaintiff to be charged with Assault in the Second Degree, Resisting Arrest, and Disorderly Conduct: Fighting/Violent Behavior and later charged and prosecuted on the felony criminal charge of Assault in the Second Degree in violation of PL 120.05(3) and misdemeanor charge of Resisting Arrest in violation of PL 205.30.

63.   All the charges including the felony charge were wrongfully and maliciously brought and/or wrongfully and maliciously maintained against the plaintiff and required retention of counsel, at his own financial cost.

64  The plaintiff and his attorney(s) were compelled to appear in Court in defense of the charges wrongfully prosecuted against him by the defendants approximately three to four times after his initial arraignment.

65.   The defendant police officers arrested the plaintiff with improper motives and/or malice and these police officers commenced and/or continued and/or maintained a criminal prosecution against the plaintiff with malice.

66.   After the plaintiff was arraigned on two criminal charges, one of which was a felony charge, during the afternoon of February 4, 2017, he was deprived of liberty in that he was released on his own recognizance under New York Criminal Procedure Law Sec. 510.10 which required him to render himself at all times amenable to the orders and processes and had to appear in criminal court approximately three to four times after his initial arraignment.

67.   On or about February 5, 2018 the charges against the plaintiff were dismissed in his favor.

68.  The conduct of defendants Strype and/or Cohen and/or Seidita and/or Nandoo and/or PO Teracciano and/or Richard Doe deprived the plaintiff of the following rights, privileges and immunities secured to him by the Constitution of the United States:

a.  The right of plaintiff not to be deprived of life, liberty or property without due process of law, and the right to the equal protection of the laws, secured by the Fourth and Fourteenth Amendment to the Constitution of the United States;

b. The right to be and remain free from the deliberate public and private humiliation inflicted upon him by the defendants secured by the due process clause of the Fourth and Fourteenth Amendment to the Constitution of the United States;

c. The right of every individual to the possession and control of his own person.

d. The right to be kept free from malicious prosecution.

69.  The acts, conduct and/or behavior of defendants Strype and/or Cohen and/or Seidita and/or Nandoo and/or Teracciano and/or Richard Doe individually and/or in concert with each other, were performed knowingly and/or intentionally and/or maliciously and/or recklessly, by reason of which the plaintiff, is entitled to an award of punitive damages.

70.  Defendants Strype and/or Cohen and/or Seidita and/or Nandoo and/or Teracciano and/or Richard Doe subjected the plaintiff to these deprivations of his rights in such a manner as to render them liable to the plaintiff for punitive damages.

71.  Punitive damages are available against one or more of these defendants and are hereby claimed as a matter of federal common law.

72.  Plaintiff seeks recovery of costs, including reasonable attorneys' fees under 42 U.S.C. § 1988.

73.   That as a result of the conduct of the defendants Strype and/or Cohen and/or Seidita and/or Nandoo and/or Teracciano and/or Richard Doe, the plaintiff was caused to sustain severe injuries, pain and suffering, fear of imminent bodily harm, emotional distress, severe PTSD, loss of reputation, loss of employment, loss of earnings, defamation of character, humiliation and mental anguish in his public and private life, loss of liberty, deprivation of freedom, denial of due process of law, and deprivation of his civil rights as secured by the Constitution of the United States and seek mental health counseling, lose wages, incur medical bills and have to retain an attorney.

**FOURTH COUNT: BY WAY OF 42 U.S.C. § 1983 FOR EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION AGAINST ALL DEFENDANT MTA POLICE OFFICERS**

74.   The plaintiff realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 35 above as if fully set forth herein.

75.   On August 4, 2017 defendants Strype and/or Cohen and/or Seidita and/or Nandoo and/or Teracciano and/or Richard Doe, individually and/or in concert with others used unreasonable force while they arrested the plaintiff by grabbing his arm, slamming and/or dragging him violently to the ground, putting their body weight on him, handcuffing him, and forcefully twisting his wrist after he was handcuffed.

76.   At all relevant times hereto, defendants Strype and/or Cohen and/or Seidita and/or Nandoo and/or Teracciano and/or Richard Doe acted under color of law.

77.   As a result of the foregoing acts of defendants Strype and/or Cohen and/or Seidita and/or Nandoo and/or Teracciano and/or Richard Doe, the plaintiff suffered injuries to his low back, pelvis, neck, head, shoulder, wrist and suffered pain and discomfort, multiple contusions, emotional distress and mental anguish, severe PTSD,

sought medical treatment at the emergency room and sought mental health counseling, lost wages, incurred medical bills and attorneys' fees.

78.  The acts, conduct and behavior of defendants Strype and/or Cohen and/or Seidita and/or Nandoo and/or Teracciano and/or Richard Doe, individually and/or in concert with each other, were done maliciously and/or in reckless disregard of plaintiff's rights, by reason of which the plaintiff, is entitled to an award of punitive damages.

79.  Punitive damages are available against defendant police officers and are hereby claimed as a matter of federal common law.

80.  Plaintiff seeks recovery of costs, including reasonable attorneys' fees under 42 U.S.C. § 1988.

**FIFTH COUNT: BY WAY OF 42 U.S.C. § 1983 FOR RETALIATORY ARREST, CONFINEMENT, USE OF EXCESSIVE FORCE, AND PROSECUTION IN VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION AGAINST ALL DEFENDANT MTA POLICE OFFICERS**

81.  The plaintiff realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 35 above as if fully set forth herein.

82.  The action herein arises under the First and Fourteenth Amendments to the Constitution of the United States of America as well as the due process and equal protection clauses to the Constitution of the United States, under federal law, particularly the Civil Rights Act, Title 42, the United States Code, § 1983.

83.  On or about Friday, August 4, 2017 at or about 12:45 a.m. while the plaintiff was in the performance of his duties as a Conductor employed by defendant MTA-MNR in GCT, defendants Strype and/or Cohen and/or Seidita and/or Nandoo and/or

Teracciano, and/or Richard Doe heard and/or were made aware of the plaintiff's exercise of his First Amendment right of free speech and freedom of expression.

84.   All defendant police officers retaliated against the plaintiff for exercising his First Amendment rights by falsely arresting and/or using excessive force and/or imprisoning the plaintiff and/or causing the malicious prosecution of the plaintiff.

85.   Defendants Strype and/or Cohen and/or Seidita and/or PO Nandoo and/or Teracciano, and/or Richard Doe did not have any probable cause to arrest the plaintiff.

86.   The plaintiff was conscious of his arrest and confinement.

87.   The plaintiff did not consent to his arrest and confinement.

88.   Defendants Strype and/or Cohen and/or Seidita and/or Nandoo and/or Teracciano, and/or Richard Doe were acting under color of law.

89.   The plaintiff was brought to the MTA police department's GCT headquarters, where he was placed into a jail cell and held against his will for hours.  Despite the pleas of the plaintiff that he was innocent, the plaintiff was arrested, handcuffed, processed, and held against his will over the course of the day for over ten hours, all to his embarrassment, shame and humiliation.

90.   On or about February 5, 2018 the charges against the plaintiff were dismissed in his favor.

91.   The conduct of defendants Strype and/or Cohen and/or Seidita and/or Nandoo and/or Teracciano and/or Richard Doe deprived the plaintiff of the following rights, privileges and immunities secured to him by the Constitution of the United States:

a. The right to freedom of speech and to freely express himself under the First and Fourteenth Amendments to the Constitution of the United States;

b. The right of plaintiff not to be deprived of life, liberty or property without due process of law, and the right to the equal protection of the laws, secured by the Fourth and Fourteenth Amendment to the Constitution of the United States;

c. The right to be and remain free from the deliberate public and private humiliation inflicted upon him by the defendants and free from their verbal and emotionally abusive, cruel, inhuman and unusual punishment, secured by the due process clause of the Fourteenth Amendments to the Constitution of the United States.

d. The right to be kept free from retaliatory verbal and emotional abuse and the physically and verbally assaultive misconduct of the defendants.

e. The right to be kept free from retaliatory arrest and confinement and malicious prosecution for exercising his First Amendment right to freedom of speech and expression.

92.   The acts, conduct and behavior of defendants Strype and/or Cohen and/or Seidita and/or Nandoo and/or Teracciano and/or Richard Doe individually and/or in concert with each other, were performed knowingly and/or intentionally and/or maliciously and/or recklessly, by reason of which the plaintiff is entitled to an award of punitive damages.

93.   Punitive damages are available against one or more of these defendants and are hereby claimed as a matter of federal common law.

94.   Plaintiff seeks recovery of costs, including reasonable attorneys' fees under 42 U.S.C. § 1988.

95.   That as a result of the conduct of the defendants Strype and/or Cohen and/or Seidita and/or Nandoo and/or Teracciano and/or Richard Doe, the plaintiff was caused to

sustain severe injuries, pain and suffering, fear of imminent bodily harm, emotional distress, severe PTSD, loss of reputation, loss of employment, loss of earnings, defamation of character, humiliation and mental anguish in his public and private life, loss of liberty, deprivation of freedom, denial of due process of law, and deprivation of his civil rights as secured by the Constitution of the United States.

**SIXTH COUNT: BY WAY OF 42 U.S.C. § 1983 FOR FAILING TO INTERVENE ON FALSE ARREST, EXCESSIVE FORCE AND WRONGFUL IMPRISONMENT IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION AGAINST ALL DEFENDANT MTA POLICE OFFICERS**

96.   The plaintiff realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 35 and paragraphs 43 through 59 above as if fully set forth herein.

97.   On August 4, 2017 defendants Strype and/or Cohen and/or Seidita and/or Nandoo and/or Teracciano individually and/or in concert with others used unreasonable force while they arrested the plaintiff by grabbing his arm, forcing him to the ground, putting their body weight on him, handcuffing him, and twisting his wrist after he was handcuffed.

98.   Defendants Strype and/or Cohen and/or Seidita and/or Nandoo and/or Teracciano and/or Richard Doe knew defendants Nicholas Strype and/or Cohen and/or Seidita and/or Nandoo and/or Teracciano and/or Richard Doe were about to falsely arrest and/or use excessive force on the plaintiff.

99.   Defendants Strype and/or Cohen and/or Seidita and/or Nandoo and/or Teracciano and/or Richard Doe had a realistic opportunity to do something to prevent the false arrest and/or use of excessive force.

100.   Defendants Strype and/or Cohen and/or Seidita and/or Nandoo and/or Teracciano and/or Richard Doe failed to take reasonable steps to prevent the false arrest and/or excessive force.

101.   Defendants Strype and/or Cohen and/or Seidita and/or Nandoo and/or Teracciano and/or Richard Doe's failure to act caused the plaintiff to suffer harm.

102.   Defendants Strype and/or Cohen and/or Seidita and/or Nandoo and/or Teracciano and/or Richard Doe acted under color of law.

103.  As a result of Defendants Strype and/or Cohen and/or Seidita and/or Nandoo and/or Teracciano and/or Richard Doe's conduct, the plaintiff suffered physical injuries to his low back, pelvis, neck, head, jaw, shoulder, wrist, pain and discomfort, emotional distress, severe PTSD, and mental anguish, lost wages and incurred medical bills and attorneys' fees.

104.  As a result of defendants Strype and/or Cohen and/or Seidita and/or Nandoo and/or Teracciano and/or Richard Doe's conduct, the plaintiff will more likely than not suffer in the future from emotional distress and mental anguish, lost wages and impairment to earnings capacity, incur medical bills and attorneys' fees.

105.  The foregoing actions, failure to act, conduct and behavior of defendants Strype and/or Cohen and/or Seidita and/or Nandoo and/or Teracciano and/or Richard Doe individually and/or in concert with each other, were performed intentionally or in reckless disregard of plaintiff's rights, by reason of which the plaintiff, is entitled to an award of punitive damages.

106.    Defendants Strype and/or Cohen and/or Seidita and/or Nandoo and/or Teracciano and/or Richard Doe subjected the plaintiff to these deprivations of his rights in such a manner as to render them liable to the plaintiff for punitive damages.

107.    Punitive damages are available against one or more of these defendants and are hereby claimed as a matter of federal common law.

108.    Plaintiff seeks recovery of costs, including reasonable attorneys' fees under 42 U.S.C. § 1988.

<u>PLAINTIFF DEMANDS TRIAL BY JURY</u>.

By his attorney,

By ___/s/ George J. Cahill, Jr._____
    George J. Cahill, Jr.
    CAHILL & PERRY, P.C.
    43 Trumbull Street
    New Haven, Connecticut 06510
    Telephone: (203) 777-1000
    Fax: (203) 865-5904
    cahill@trainlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of June 2019, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/  George J. Cahill, Jr.*
George J. Cahill, Jr.